# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| ROBERT DOUGLAS CROWELL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. CIV-12-1126-L |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Robert Douglas Crowell, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (Doc. No. 12, hereinafter "R. __"). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration ("SSA") on February 14, 2013. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for the former Commissioner, Michael J. Astrue, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner's decision be AFFIRMED in part and REVERSED AND REMANDED in part.

## PROCEDURAL HISTORY

Plaintiff alleges he is disabled as a result of injuries sustained on May 1, 2002 in a motorcycle accident. He has applied twice for DIB and SSI.

Plaintiff's first applications for DIB and SSI were filed on June 16, 2005 and July 13, 2005, respectively, alleging disability as a result of the May 2002 accident. The applications were denied at the administrative level on October 21, 2005. R. 4. Plaintiff did not request an administrative hearing or appeal these first denials to a federal district court. *Id*.

At issue in this proceeding are Plaintiff's second applications for DIB and SSI, filed together on August 26, 2008. In the second applications, Plaintiff again alleges a disability as a result of the May 2002 accident. *Id*. at 15. At the administrative level, the applications were denied on initial consideration and on reconsideration, following which Plaintiff was granted an administrative hearing before an administrative law judge ("ALJ"). *Id*. at 15, 28-55. By decision dated April 19, 2010, the ALJ found that Plaintiff was not disabled and denied both DIB and SSI. *Id*. at 12-23.

Plaintiff sought and was granted review by the SSA Appeals Council. By decision dated July 21, 2012, the Appeals Council determined that Plaintiff's application for DIB was barred by the doctrine of administrative res judicata. *Id*. at 4-7. As for Plaintiff's application for SSI, the Appeals Council found Plaintiff was not disabled and therefore not entitled to benefits. *Id*. The decision of the Appeals Council is the final decision of the

Commissioner.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the Commissioner's findings, to determine if this substantiality test has been met. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## THE ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall*, 561 F.3d at 1052 (summarizing steps); 20 C.F.R. §§ 404.1520, 416.920. Both the ALJ at the administrative hearing level and the

Appeals Council on review denied Plaintiff's second applications for benefits, but they did so in different ways. Because the differences inform Plaintiff's arguments on appeal, both decisions are summarized here.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since on or before the date of his application. R. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: back pain, status post right arm fracture, and hypertension. *Id*. The ALJ found that Plaintiff does not have a severe mental impairment. *Id*. at 17-19. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id*. at 19. The ALJ specifically found that Plaintiff's alleged mental impairment "does not meet or medically equal the criteria of listing 12.04 or any other mental listing." *Id*.

The ALJ's step four and step five findings are inconsistent. At step four, the ALJ found that Plaintiff does not have the residual functional capacity ("RFC") to perform his past relevant work. *Id*. at 21-22. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC – including the ability to perform the *full range* of light and sedentary work – that a significant number of jobs exist in the national economy that Plaintiff can perform. *Id*. at 21-23. The fundamental inconsistency is that Plaintiff's past relevant work itself is classified as sedentary; thus, if Plaintiff cannot perform his past relevant work, he cannot perform the full range of light and sedentary work. At one point, the ALJ states that Plaintiff "cannot perform any of his past relevant work; however there are multiple other types of work in the light and sedentary [exertional range] that he could

4

perform." *Id*. at 21. At another point, the ALJ states that Plaintiff has the RFC "to perform the full range of light and sedentary work." *Id*.

The Appeals Council accepted review and issued its own decision. *Id*. at 3-7. The Appeals Council treated Plaintiff's applications for DIB and SSI separately. With respect to the application for DIB, the Appeals Council determined that the ALJ should have relied on the October 21, 2005 administrative-level denial of Plaintiff's first application for DIB, applied the doctrine of administrative res judicata, and dismissed the application on that basis. *Id*.

With respect to Plaintiff's application for SSI, the Appeals Council denied benefits at step four. The Appeals Council did not change the ALJ's step one determination. *Id*. at 5. At step two, the Appeals Council added obesity to the list of Plaintiff's severe impairments. *Id*. At step three, the Appeals Council found that Plaintiff's impairments do not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id*. at 6.

At step four, the Appeals Council, unlike the ALJ, found that Plaintiff *could* perform his past relevant work and on that basis denied disability benefits. *Id*. at 5-6. Specifically, the Appeals Council stated that it "adopts the [ALJ's] finding that the claimant has the residual functional capacity to perform the full range of work at the light level of physical exertion with no mental or other non-exertional limitations." *Id*. at 5. The Appeals Council then found that Plaintiff's RFC was sufficient for him to perform his "past relevant work as a manager/supervisor in the trucking/transportation industry," as that job was described by Plaintiff and a vocational expert. *Id.*

5

## ISSUES PRESENTED

Plaintiff challenges the Appeals Council's dismissal of his claim for DIB based on the doctrine of administrative res judicata and contends that the application of that doctrine violated his due process rights. *See* Pl.'s Brief (Doc. No. 14) at 30-33.[2] Plaintiff also contends that the Appeals Council erred at step three of the sequential evaluation in that the findings regarding whether Plaintiff's impairments met or equaled a listing in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 were conclusory and unsupported by substantial evidence in the record. *Id*. at 20-22. Finally, Plaintiff contends that the Appeals Council erred at step four of the sequential evaluation in that (a) the phase one evaluation of Plaintiff's RFC did not include his non-severe mental limitations and thus was unsupported by substantial evidence; and (b) the phase three determination of whether Plaintiff could perform his past relevant work was done improperly or not at all. *Id*. at 22-30.

## ANALYSIS

**I.  The DIB Application: The Commissioner's Decision Not to Reopen the 2005 Application and to Dismiss the 2008 Application on the Basis of Administrative Res Judicata.**

To establish eligibility for DIB, a claimant must show that he was disabled on or before his date last insured. *See* 20 C.F.R. § 404.131(a).[3] It is undisputed that Plaintiff's

---

[2]  All page numbers are those assigned by ECF docketing.

[3] Eligibility for SSI, unlike DIB, is not tied to a date last insured. If Plaintiff were found to be disabled as of the date of his second application for SSI (August 26, 2008), he would be entitled to SSI payments beginning the month after the date of that application. *See* 20 C.F.R. § 416.335.

date last insured was December 31, 2003. R. 4, 15. Thus, if the October 21, 2005 decision stands as a final adjudication that Plaintiff was not disabled between May 2002 and October 2005, Plaintiff is unable to recover DIB. The only exception would be if the Commissioner, in his discretion, chose to reopen Plaintiff's prior application.

Here, the Commissioner declined to reopen Plaintiff's 2005 DIB application and held that the adjudication of that prior application required, pursuant to the doctrine of administrative res judicata, dismissal of Plaintiff's 2008 DIB application. The ALJ found there was no "basis for reopening the claimant's prior application filed on July 13, 2005." R. 15. On review by the Appeals Council, Plaintiff argued that the ALJ had not properly considered new and material evidence,[4] specifically 169 pages of medical records from the OU Medical Center generated during Plaintiff's care after the May 1, 2002 accident (Exhibit 5F, R. 292-460) that were submitted for the first time with Plaintiff's 2008 DIB application. The Appeals Council disagreed, stating:

> With regard to the arguments by the claimant's representative (Exhibit 13E), the Appeals Council notes that the medical records from the OU Medical Center, dated May 25, 2002 to December 28, 2007 (Exhibit 5F) are new but not material, because they indicate significant improvement in the claimant's condition in less than twelve months and therefore do not affect the prior findings (HALLEX I-3-3-6).

*Id*. at 5. On that basis, the Appeal Council implicitly denied reopening and expressly applied the doctrine of administrative res judicata, dismissing the 2008 DIB application. *Id*. at 4-5.

---

[4] New and material evidence may constitute "good cause" for reopening a previous application for benefits. *See* 20 C.F.R. §§ 404.988, 404.989(a)(1).

7

Whether to reopen a prior application for benefits is a discretionary decision reserved to the Commissioner, and as such the Commissioner's choice falls outside the jurisdiction of a federal district court to review except upon the showing of a colorable claim that such decision violated a constitutional right. *See Blair v. Apfel*, 229 F.3d 1294, 1295 (10th Cir. 2000). The only constitutional deprivation suggested by Plaintiff is that he was denied his right to due process because the Commissioner, in evaluating Plaintiff's 2008 DIB application, refused to consider the proffered medical records from the OU Medical Center. The Appeals Council, however, did review these records in deciding whether to reopen Plaintiff's 2005 DIB application as explained above. Accordingly, Plaintiff was not denied due process in connection with the Appeals Council's election not to reopen the prior application. Because Plaintiff has not shown a colorable constitutional claim, the decision not to reopen is one this Court may not review.

The Court has jurisdiction to determine whether administrative res judicata was properly applied. *See McGowen v. Harris*, 666 F.2d 60, 62-63 (4th Cir. 1981). SSA regulations provide that such doctrine is applicable where there is "a previous determination or decision under this subpart about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1); *see also Poppa*, 569 F.3d at 1170. It is undisputed that: (a) Plaintiff's 2005 DIB application was based on an allegation of disability resulting from the May 1, 2002 accident; (b) the 2005 application was denied at the administrative level on October 21, 2005; and (c) such

8

decision became final on that date because Plaintiff did not seek further review. This is a prior determination of the same rights, on the same facts and issues, and for the same controlling time period, as the rights that were in dispute in Plaintiff's 2008 DIB application.

Plaintiff nevertheless contends that administrative res judicata is inapplicable because "the decision the agency made in 2005 and the decision in the case at bar are not based on the same facts." Pl.'s Brief at 25. Specifically, Plaintiff argues that the OU Medical Center records constitute new facts concerning Plaintiff's disability following the 2002 accident. However, a party's submission of additional *evidence* regarding the facts underlying a claim does not necessarily mean that there are new *facts* or new issues regarding the claim. "[P]laintiff reads too narrowly the concept of 'same' claim. . . . The new additional evidence of the same disability did not create a different claim, only a different mix of evidence in support of the claim." *McDonald v. Barnhart*, No. C 01-03738 WHA, 2002 WL 31663233, at *2 (N.D. Cal. Nov. 19, 2002) (holding that administrative res judicata was properly applied to dismiss a claim for disability benefits); *see also McGowen*, 666 F.2d at 66-67 ("The unitary nature of the claim is not affected by the fact that following denial on the merits of the claim as originally presented, the claimant presented 'new and material' evidence . . . ."). The mere fact that additional medical evidence was included with Plaintiff's August 26, 2008 application for DIB does not render the facts and issues in the second application different from those in

the first.[5]  Therefore, the undersigned concludes that the Appeals Council properly applied the doctrine of administrative res judicata to dismiss Plaintiff's 2008 DIB application.[6]

## II.    The SSI Application: The Commissioner's Sequential Evaluation Analysis.

Plaintiff's remaining assignments of error are applicable only to his claim for SSI. Plaintiff is entitled to SSI if he has proven disability on or after the date he submitted the second SSI application—*i.e.*, August 26, 2008.

### 1. Step Three

At step three, the Appeals Council adopted the ALJ's finding "that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  R. 5.  Plaintiff argues that the ALJ

---

[5] The undersigned has considered – as instructive but not binding, *see Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) – the Agency's own examples of "changes in issues" requiring the Commissioner to refrain from applying administrative res judicata, as enumerated in Volume I, Chapter I-3-3-9(D) of the Hearings, Appeals, and Litigation Law Manual (HALLEX) (S.S.A. Sept. 8, 2005), 1993 WL 643131.  The record supports the conclusion that none of the enumerated exceptions to application of the doctrine apply in this case.

[6] Plaintiff's suggestion of a due process violation, discussed above, is actually made in his challenge to the application of administrative res judicata.  But the fact that additional evidence could be presented in support of a claim barred by res judicata does not create a due process question -- if that were so, the exception would swallow the rule.  *See Shelton v. Sullivan*, No. 90-1120-C, 1990 WL 193774, at *2 (D. Kan. Nov. 14, 1990) ("Plaintiff insists she is not relitigating the original facts of her case and contends her claim is based on the Appeals Council's arbitrary refusal to review her 'new and significant medical evidence.'  Since this evidence only goes to establish the same claim made in the earlier applications, due process does not bar the effect of *res judicata*.").  Plaintiff has not shown that he was denied the opportunity to present the existing OU Medical Center records with his 2005 DIB application or even good cause for failing to do so.

failed to analyze Plaintiff's alleged cognitive impairments under the correct listing, the ALJ's determination was conclusory, and the ALJ's determination was unsupported by substantial evidence in the record. Pl's Brief at 20-24.

The ALJ stated in his analysis that Plaintiff's "mental impairment does not meet or medically equal the criteria of listing 12.04 *or any other mental listing*." R. 19 (emphasis added). Listing 12.04 concerns presumptively disabling effects of affective disorders, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, but Plaintiff's contention was that he has a cognitive disorder stemming from a closed head injury. R. 31-32. It appears that the ALJ mistakenly referred to listing 12.04 rather than 12.02. The point is moot, however, because (a) the ALJ also stated that Plaintiff's medical impairment does not meet or medically equal the criteria of "any other mental listing" (R. 19); and (b) the substantive evaluation performed by the ALJ applies equally to listing 12.02, which is the correct evaluative standard.

For incidents of traumatic brain injury ("TBI"), the Commissioner should follow the guidelines for evaluating impairments caused by cerebral trauma in listing 11.18. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(F). Listing 11.18, in turn, states that cerebral trauma is to be evaluated under 11.02 (*Epilepsy–Convulsive*), 11.03 (*Epilepsy–Nonconvulsive*), 11.04 (*Central Nervous System Vascular Accident*), or 12.02 (*Organic Mental Disorders*), as applicable. *See* Listing 11.18. Of these, listing 12.02 applies to the conditions claimed by Plaintiff. To meet listing 12.02, a claimant must demonstrate "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain"

supported by "[h]istory and physical examination or laboratory tests[7] [that] demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." *See* Listing 12.02. According to listing 12.02, a claimant is presumptively disabled when *either* the requirements of 12.02(A)[8] and 12.02(B) are met *or* the requirements of 12.02(C) are met.

Although the paragraph "A" criteria of listings 12.02 and 12.04 differ, the paragraph "B" and paragraph "C" criteria for the two listings are identical. The ALJ found that Plaintiff did not meet the criteria of paragraph "B" or paragraph "C," without specifying whether he was referring to 12.02(B) and (C) *or* 12.04(B) and (C). R. 19. Regardless, because the "B" and "C" criteria for the two listings are identical, the

---

[7] Laboratory tests and CT scans taken the day after Plaintiff's motorcycle accident indicated hemorrhaging and cerebral edema. R. 397. A final CT scan taken September 30, 2002, demonstrated there was no more hemorrhaging and that Plaintiff's brain was essentially normal with the exception of some encephalomalacia (softening of the brain tissue). *Id*. at 413. This evidence of closed head trauma does not demonstrate that Plaintiff meets the requirements of listing 12.02(A).

[8] The paragraph "A" criteria of the listing at 12.02 require a claimant to demonstrate:

loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following: 1. Disorientation to time and place; or 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or 4. Change in personality; or 5. Disturbance in mood; or 6. Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.

Listing 12.02(A).

distinction is not material. The result would have been the same under either set of criteria.

All of the above serves to frame the question before the Court: whether the ALJ's finding that Plaintiff does not meet the paragraphs "B" and "C" criteria, as required for listing 12.02 and other mental impairment listings, is supported by substantial evidence in the record. The undersigned concludes that it is.

The paragraph "B" criteria are met where a claimant's mental disorder results in at least two of the following: "(1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02(A). The paragraph "C" criteria are met where a claimant has a

> Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* at 12.02(C).

Plaintiff has complained of memory loss, hallucinations, and headaches.[9] R. at 44-46, 257. Following a consultative examination on August 23, 2005, Dr. James P. Metcalf opined that Plaintiff "does not appear to have a cognitive disorder or any pain behaviors." *Id.* at 258. Dr. Metcalf concluded that Plaintiff "has normal cognitive function." *Id.* at 259. Further, two consultative examinations were performed by psychologist R. Keith Green, Ph.D., one on October 5, 2005 (*id.* at 265-68) and one on December 3, 2008 (*id.* at 468-71). In both reports, Dr. Green diagnosed Plaintiff as having a "cognitive disorder" not otherwise specified. *Id.* at 268, 471.[10] In his 2008 report, Dr. Green stated that testing suggested that Plaintiff's "[m]emory functions appeared to be intact in all three spheres." *Id.* at 469. Dr. Green concluded that Plaintiff "displayed adequate attention and concentration as well as persistence, good frustration tolerance, and the ability to work at an adequate pace, as well as retain and carry out simple, detailed and more complex instructions and relate interpersonally in an appropriate manner." *Id.* at 470.

The ALJ determined that Plaintiff has mild restrictions in activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 19. He determined that there had been no incidents of extended-

---

[9] Plaintiff argues that the ALJ, in his step three analysis of whether Plaintiff's mental limitations meet a listing, did not consider Plaintiff's complaints of frequent headaches. Pl.'s Brief at 14-16. Headaches are physical symptoms of a possible physical problem and thus generally not considered in evaluating the severity of a mental disorder. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02(A).

[10] In both reports, Dr. Green qualified his diagnosis by stating that comprehensive psychodiagnostic testing and acquisition of complete background records would be recommended to corroborate his impressions, which he noted were based solely upon the patient's clinical presentation and reported complaints and history. R. 268, 471.

duration decompensation. *Id*. These findings are reasonable in light of the evidence. Based on these findings and other discussion not repeated here, the ALJ determined that Plaintiff does not meet the paragraph "B" and "C" criteria, as required for listing 12.02 and other mental impairment listings. The ALJ's step-three analysis was adequate, and his conclusion, adopted by the Appeals Council in its decision, is supported by substantial evidence in the record as a whole.

### 2. Step Four

A proper step four analysis consists of three phases:

(1)  a determination of the claimant's RFC, including any physical and mental limitations;

(2)  a determination of "the physical and mental demands" of the claimant's past relevant work; and

(3)  a determination of "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Plaintiff challenges the Commissioner's determinations in the first and third phases. With respect to phase one, Plaintiff contends that the ALJ's evaluation of Plaintiff's RFC, adopted by the Appeals Council, failed to include Plaintiff's non-severe mental impairments or, if it did, that such evaluation was not properly explained and not supported by substantial evidence in the record. With respect to phase two, Plaintiff contends that the Appeals Council's determination that Plaintiff can perform his past relevant work as a manager/supervisor in the trucking/transportation industry – a decision that was contrary to that of the ALJ – is

tainted by the flawed assessment of Plaintiff's RFC and not supported by substantial evidence.

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit recently clarified the requirements for a RFC evaluation involving mental impairments that were found at step two to be medically determinable but not severe. In that situation, the Commissioner may not "simply rely on [a] finding of non-severity as a substitute for a proper RFC analysis." *Id*. at 1065. Rather, the Commissioner must "consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Id*. The Commissioner "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. . . and nonmedical evidence." *Id*.

Here, the ALJ recognized that, notwithstanding his analysis of Plaintiff's physical and mental impairments at step two/step three, he was required at step four to engage in a distinct and broader analysis of Plaintiff's RFC. R. 19. And, indeed, in evaluating Plaintiff's RFC, he discusses at length Plaintiff's physical limitations. *Id*. at 19-22. His discussion of Plaintiff's *mental* limitations, however, is meager, consisting of the following: "[T]he claimant says he has a cognitive disorder and [is] unable to remember. . . . The undersigned finds the claimant's allegations to be not supported by the medical evidence of record." *Id*. at 21.

This in and of itself might not be enough to require remand,[11] but the more fundamental problem is that it is unclear what the ALJ's assessment of Plaintiff's RFC actually was -- and thus it is unclear whether the Appeals Council adopted the correct finding. As discussed above, the ALJ's step four/step five findings are inconsistent. The ALJ found that Plaintiff does not have the RFC to perform his past relevant work, which is classified as sedentary, but then states that Plaintiff has the RFC to perform the full range of light and sedentary work. *Id*. at 21-22. Making this even more opaque is the fact that one logical reason, perhaps the most likely reason, for the ALJ's conclusion that Plaintiff cannot perform his past relevant work is that Plaintiff's mental limitations prevent him from performing at the skill level needed for that work.[12] According to the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles, the work at issue –

---

[11] A step four determination that a claimant's RFC is not diminished by a mental limitation properly may be made notwithstanding a prior step two finding of a non-severe mental impairment. *See Suttles v. Colvin*, 2013 WL 5832529, at *2-3 (10th Cir. Oct. 31, 2013) (holding that ALJ, despite step two finding of mild mental limitation, conducted proper RFC assessment where he discussed evidence of depression and then "pointedly omitted" any limitation associated with that mental impairment from the RFC).

[12] The ALJ's questioning to the VE does not shine any light on the matter. The ALJ did not pose a hypothetical question that omitted Plaintiff's claimed mental limitations from the RFC. Rather, the ALJ appeared to accept Plaintiff's claims at face value, asking "from a vocational point of view, if [the claimant] were to go out and look for a job, could he find a job at substantial gainful activity on a sustained basis at this time?" R. 53. The VE responded that Plaintiff could not do so, because "his cognitive skills would not allow him to hold down a 40-hour-workweek at this present time." *Id*. The ALJ did not expressly cite this aspect of the VE's testimony in his decision.

manager/supervisor in the trucking/transportation industry – is skilled work with a high specific vocational preparation ("SVP") rating.[13]

The Appeals Council, for its phase one evaluation of RFC, merely stated that it "adopts the [ALJ's] finding that the claimant has the residual functional capacity to perform the full range of work at the light level of physical exertion with no mental or other non-exertional limitations." *Id*. at 5. From that conclusion, the Appeals Council determined that Plaintiff could perform his past relevant work because such work was classified as sedentary. *Id*. The superseding nature of the Appeals Council's decision is not sufficient to remove the problems inherent in the ALJ's underlying decision. While in general a decision of the Appeals Council is independent of that of the ALJ, in this particular matter the Appeals Council merely relied on a finding made by the ALJ and provided no additional discussion or independent analysis. Specifically, the Appeals Council provided little to no explanation for how it could accept the ALJ's assessments of Plaintiff's RFC and the demands of his past relevant work but reach a directly contrary conclusion as to whether Plaintiff's RFC permitted him to perform his past relevant work. If the Appeals Council's decision were reviewed on its own terms, it would be found to lack the requisite "narrative discussion describing how the evidence supports each conclusion." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996)).

---

[13] The VE testified that Plaintiff's past relevant work has a SVP rating of 8, which generally requires between 4 and 10 years of preparation. R. 53. The record demonstrates that Plaintiff worked in the trucking industry from 1982 through 1998. *Id*. at 32-39. When he left the company, he had been promoted to driver supervisor. *Id*.

In short, the Commissioner's step four analysis is procedurally or substantively flawed. The matter should be remanded for further proceedings concerning the effect of Plaintiff's medically determinable mental impairments on his RFC, if any, and for further analysis at steps four and five, including any further hearing the Commissioner deems necessary.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the Commissioner, and the pleadings and briefs of the parties, the undersigned recommends as follows:

(1) that the decision of the Commissioner be AFFIRMED with respect to the dismissal of Plaintiff's application for disability insurance benefits; and

(2) that the decision of the Commissioner be REVERSED with respect to the denial of Plaintiff's application for supplemental security income and REMANDED for further proceedings as more fully set forth in this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their respective rights to file an objection to this Report and Recommendation with the Clerk of this Court on or before December 11, 2013, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both the factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED on the 27th day of November, 2013.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE